IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANCHIT JAIN, | ) |
| | ) |
| Plaintiff, | ) No. ~~2:03-mc-2025~~  2:18-CV-1163 |
| v. | ) |
| | ) Jury Trial Demanded |
| CARNEGIE MELLON UNIVERSITY, | ) |
| | ) *ELECTRONICALLY FILED* |
| Defendant. | ) |

## **VERIFIED COMPLAINT**

### **Preliminary Statement**

1. This cause of action is brought by Plaintiff, Sanchit Jain, a former student at Carnegie Mellon University ("CMU"), alleging disability-based discrimination in violation of Section 504 of the Rehabilitation Act of 1973 and Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et. seq.*

2. Plaintiff alleges that the Carnegie Mellon University discriminated against Plaintiff, a protected individual with a disability, by:

    a. Discouraging Plaintiff from utilizing his approved disability accommodations;

    b. Denying Plaintiff's request for an incomplete because he had previously availed himself of his approved disability accommodations;

    c. Denying Plaintiff an opportunity to take a make-up final exam;

    d. Denying Plaintiff opportunity to retroactively drop his courses;

1

    e. Subjecting Plaintiff to a different grading scale than that of his peers in his Computer Networks course.

3. Plaintiff requests declaratory, injunctive, and equitable relief to remedy Carnegie Mellon University's discrimination.

**Parties**

4. Plaintiff was at all relevant times, a student in Carnegie Mellon University's Master of Science in Computational Data Science ("MCDS") program in the School of Computer Science.

5. Defendant, Carnegie Mellon University, is a recipient of federal financial assistance for purposes of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and an undergraduate or postgraduate private school for purposes of Title III of the Americans with Disabilities Act.

**Procedural History**

6. On December 18, 2017, Plaintiff was dismissed from the MCDS program at Carnegie Mellon University on the grounds that he had failed two of his courses; one being a core course.

7. On January 11, 2018, he submitted an appeal of the dismissal to the Dean of the School of Computer Science.

8. On January 28, 2018, the Dean upheld the dismissal.

2

9. Plaintiff appealed that decision to the Provost of the University on February 11, 2018. The Provost's Office upheld the Dean's decision on March 8, 2018.

10. On February 7, 2018, Plaintiff filed a complaint with the Office for Civil Rights.

**Jurisdiction and Venue**

11. Jurisdiction is invoked pursuant to 28 U.S.C. §1331 (questions of federal law) based upon Section 504 of the Rehabilitation Act of 1973 (hereinafter, referred to as *"Section 504"*) and Title III of the Americans with Disabilities Act (hereinafter, referred to as the *"ADA"*)

12. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1)(2), because the events and omissions giving rise to the claims in this case arose in this judicial district.

13. The claims for declaratory and injunctive relief are authorized by 28 U.S.C. §2201 and §2202.

**Facts**

14. Plaintiff enrolled in Carnegie Mellon University's Master of Computational Data Science Program in the Fall of 2017. Plaintiff had previously completed a year at the University of Wisconsin's Master of Science in Computer Science program where he earned a GPA of 4.0.

15. Plaintiff was diagnosed with Adult ADHD (inattentive type) in December 2016 while enrolled at University of Wisconsin.

16. In May 2017, while at University of Wisconsin, Plaintiff also began experiencing a sleep disorder which caused him to sleep excessively and have significant difficulty awakening

3

from sleep. This was ultimately diagnosed in March 2018 as chronic hypersomnia as well as Microcytic Anemia, Beta Thalassemia & Severe Vitamin B-12 deficiency. Because Plaintiff did not consider this a disability, but a chronic health condition, he did not report it to the Disability Resources and Service Office at CMU.

17. Plaintiff enrolled in the following courses for the Fall 2017 semester at CMU: Distributed Systems (15-640); Computer Networks (15-641), Storage Systems (15-746) and Systems Seminar (15-649A). He eventually dropped Storage Systems to give himself more time to focus on his other courses.

18. After Plaintiff enrolled at CMU, he met with the University's Disability Resources and Services Office to request reasonable accommodations for his ADHD.

19. Upon presentation of the appropriate medical documentation, he was granted certain disability accommodations and a Summary of Accommodations Memorandum was issued on September 27, 2017.

20. The Memorandum, applicable only for the 2017-2018 school year, provided that Plaintiff would receive the following accommodations: one hundred percent additional time on examinations; additional notes/taped lectures (student must request notes from other students); flexible assignment completion dates where possible and appropriate.

21. Plaintiff was given a Flexible Assignment Completion Student-Faculty Agreement which was to be completed with each professor from whom he wished to get this accommodation. The form indicated that faculty and students were "encouraged to dialogue about a student's accommodations to determine where a faculty member can (or cannot) be flexible.

22. The form required that the faculty member note the various assignments for the class and indicate whether extra time would be allowed and specify how much extra time would be allowed for each assignment.

23. Plaintiff provided the Accommodation Memorandum his professors in Distributed Systems and Computer Networks as well as the Flexible Assignment Completion Faculty Student Agreement Form.

24. Plaintiff met with Professor Srinivasa Seshan, who taught Distributed Systems. Professor Seshan did not engage in a back and forth dialogue envisioned by the Office of Disability Resources, but simply informed Plaintiff that homework solutions were posted immediately following submission deadlines so that flexible assignment deadlines were not possible. Professor Seshan also indicated that it was not possible to grant extensions on group projects and that because solo projects were followed almost immediately by a group project, it would not be possible to grant extensions on the solo projects. Professor Seshan did not engage in a good faith, interactive discussion as to how he could accommodate Plaintiff and did not complete a Flexible Assignment Completion Faculty Student Agreement Form.

25. In an email to the Office of Disability Resources in October 2017, Plaintiff indicated that contrary to Professor Seshan's statement, the homework solution for the assignment that had been given thus far, was posted a week, rather than the day after the submission deadline. As such, a flexible deadline could have been provided in that instance.

26. Plaintiff also attempted to obtain a Flexible Assignment Completion Faculty-Student Agreement from Professor Steenkiste, who taught Computer Networks. Professor Steenkiste informed Plaintiff that it because was not possible to determine deadline and

5

.
.
.

extension dates in advance, he could not complete the Agreement. However, he requested that Plaintiff email him 2-3 days before project deadlines to request extensions.

27. During the month of October, Professor Seshan assigned a project that was to be completed with a partner. Both Plaintiff and his partner experienced health difficulties that impacted their ability to complete the project in a timely fashion. Upon presentation of medical documentation, Professor Seshan granted the pair an extension as well as additional time to study for the mid-term examination. This was despite his prior representation, in the context of a request for disability accommodation, that there were no flexible deadlines for group projects.

28. In December 2017, Plaintiff requested an extension for a solo project in the same course. Professor Seshan provided everyone in the course the opportunity to submit the project two days late with a penalty. As an accommodation for Plaintiff, Professor Seshan, indicated that should he submit the project two days late, Plaintiff would receive only a one-day penalty instead of the two days that would be accorded the other students.

29. However, Plaintiff was unable to complete the project by the extended (two day) deadline and the professor refused to grant an additional extension; indicating that the University did not allow submissions after finals week. As such, Plaintiff was unable to submit and receive any credit for that project.

30. Because Plaintiff was not able to submit the project and would thus receive a class grade below the required passing grade, he requested an incomplete in the course on December 11, 2017.

31. The request was intended not as a request for a disability accommodation, but as a standard request for an incomplete which, per CMU Policy guidelines and those

6

contained in Master of Computational Data Science Program Student Handbook, is to be given if the instructor agrees "when a student, for reasons beyond his or her control, has been unable to complete the work of a course, but the work completed to date is of passing quality and the grade of incomplete provides no undue advantage to that student over other students."

32. The work completed by Plaintiff as of that date was of passing quality and the grade of incomplete would give him no undue advantage as Plaintiff would still be required to complete the project at a later date and otherwise be subject to all other course requirements.

33. Plaintiff attempted to provide medical documentation to Professor Seshan to document the "circumstances beyond his control" which necessitated the request for an incomplete. However, Professor Seshan responded that "unfortunately, without an explicit medical letter/request from CMU disability, we will not be able to give you an incomplete." He later indicated that he he needed a note from the CMU administration requiring that an incomplete be granted for the semester.

34. Plaintiff responded that he was not requesting an incomplete as a disability accommodation but as an academic modification afforded students at CMU (and at all institutes of higher education) when circumstances arise beyond their control which impact their ability to complete their work in a timely fashion. However, Plaintiff agreed to contact the Office of Disability Resources to attempt to obtain the documentation requested by Professor Seshan.

35. In response to Plaintiff's request, the Office of Disability Resources responded that it was unable to recommend an incomplete because incompletes are purely academic decisions made at the discretion of each individual course instructor.

36. When Plaintiff brought this to the attention of the instructor, Professor Seshan indicated that Plaintiff would not be receiving an incomplete grade for his course because he had already been granted too many extensions.

37. On December 11, 2017, Plaintiff also requested an incomplete in his Computer Networking course because of difficulty submitting classwork on time. Professor Sherry, one of the professors for the class, simply responded that they could not assign an incomplete, but that it was not too late to drop/withdraw. No reason was given for the denial and despite later emails faulting Plaintiff for not providing medical records to support his request, Professor Sherry never requested any supporting documentation before denying the incomplete.

38. Plaintiff learned that he would not be receiving the incompletes shortly before the final examination in his Computer Networking course. The denial of his request for the incomplete caused Plaintiff significant anxiety and he failed the final examination as a result.

39. Knowing that this anxiety also might impact his performance on the examination in Distributed Systems, Plaintiff requested that he be permitted to take a make-up examination in that course rather than take it on the scheduled day. CMU policy provides that in exceptional circumstances, a student may encounter an emergency that interferes with his/her ability to participate in a final examination. In such instances, the policy provides that the student should contact the instructor as soon as possible to request a

make-up exam. Plaintiff contacted the professor requesting that he be permitted to take the final examination on another day due to his health condition.

40. The professor responded that there was no "planned" make up exam for that semester and that therefore Plaintiff would have to take the final examination on the regularly scheduled examination date.

41. This disability-based discrimination was further evidenced in statements made by Plaintiff's advisor, Professor Majd Sakr, who urged Plaintiff not to request flexible assignment completion accommodations for any of his assignments. He said this to Plaintiff repeatedly during advisory sessions and on December 11, 2017, sent him an email explicitly stating that he should not ask for another extension or an incomplete in his courses. In discouraging Plaintiff from utilizing a disability accommodation (flexible assignment completion), Professor Majd Sakr engaged in disability discrimination.

42. Because Plaintiff was denied incompletes and the opportunity to take a make-up examination, his grades were negatively impacted, and he requested permission from his advisor, Professor Sakr, to retroactively drop the Distributive Systems Course. The CMU website provides a form entitled "Retroactive Add/Drop Petition, *Prior Semester*" and indicated that by submitting the petition, the student is "requesting permission to add/drop a course **after the last day of classes**." The form further provides that graduate students must have the permission of their department. Neither the form nor CMU or program policy manuals provide any further information as to any restrictions on dropping a course or what factors might go into determining whether a student might be permitted to take that action.

43. Professor Sakr denied Plaintiff's request to retroactively drop the course without providing a reason.

44. In fact, rather than grant the request to retroactively drop the course, Professor Sakr recommended that Plaintiff take a one to two year leave of absence and to "mature" and be less susceptible to bullying. These discriminatory statements and the overall failure to assist Plaintiff as he struggled with his disability and a chronic health condition that compounded the impact of his disability, created a hostile environment for the Plaintiff.

45. On December 18, 2017 met with Director of the MCDS Program, Professor Eric Nyberg to discuss his academic issues. Professor Nyberg requested that Plaintiff write an Academic Recovery Plan for the upcoming Academic Review meeting in which Plaintiff was to hold himself accountable (and not blame others) for his academic difficulties.

46. Plaintiff complied with this request and wrote a Recovery Plan in which he indicated that he should have prioritized his assignment rather than focus on extensions requesting extensions for past due projects. This admission in no way dilutes Plaintiff's claim that he was discriminatorily denied incompletes, a make-up exam, and retroactive course drop because of his disability.

47. Plaintiff was also subjected to a different grading standard than his peers in his Computer Networking class. He was required to get a 75% to get a grade of D in a course whereas his peers received the grade of D for a 60%.

48. As a result of the above-described failures of CMU and Professors in the MCDS program to help Plaintiff access the full range disability accommodations and discretionary academic modifications offered to all students, Plaintiff failed both Computer Networking and Distributed Systems and was eventually dismissed from the program.

49. Plaintiff participated in all levels of the internal appeal process, and his dismissal was ultimately upheld. As a result of its "investigation," CMU concluded that Plaintiff had not been discriminated against on the basis of his disability. In upholding the dismissal, the final letter from the Provost's office dated March 8, 2018, indicated that "the University does not grant retroactive accommodations, particularly in cases where accommodations are not requested until very late in the semester and without medical documentation of any changes to your medical conditions to support your requested additional accommodations."

50. In upholding Plaintiff's dismissal on these grounds, CMU improperly treated all of Plaintiff's requests (for an incomplete, to retroactively drop a class, and to take a make-up exam) as disability accommodations. This is in direct contradiction to the University's own policies and those of the Office of Disability Resources. All of the above academic modifications are offered to students with and without disabilities, are granted at the discretion of the instructor, and do not require the same level of medical documentation and formality as do disability accommodations which must be processed by the Office of Disability Resources.

51. By improperly positing Plaintiff as seeking disability accommodations, the University effectively deflected attention away from the discriminatory actions of its professors and placed the blame on Plaintiff for his failure to abide by the rules regarding seeking and obtaining disability accommodations. However, the facts show that Plaintiff struggled with an undiagnosed medical condition, apart from his disability, that flared up during the period he was attending CMU. As would any student experiencing a transient medical condition, Plaintiff attempted to utilize the resources available to students in such circumstances: incompletes, exam make-ups, and retroactive course drops. However,

because Plaintiff also necessitated disability accommodations, the University unfairly and discriminatorily denied him access to those other resources.

### COUNT I: Violation of Section 504 of the Rehabilitation Act of 1973

52. Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count I.

53. Plaintiff is a qualified individual with a disability, as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §705(20). Plaintiff suffers from ADHD, which is a qualifying disability. This disability substantially limits major life activities; including learning and working, because it substantially limits his ability to complete examinations on a timely basis and limits his ability to organize and stay on task, thereby affecting his ability to function in his role as a student at Carnegie Mellon University.

54. Plaintiff is otherwise qualified to participate in CMU's curriculum and is able to participate in said program with reasonable accommodations.

55. Defendant receives federal financial assistance, as defined by 29 U.S.C. §7904, and, as such, may not discriminate against a person because of his disability.

56. A substantial factor in CMU's decision to deny Plaintiff's requests for incompletes, a final exam make-up opportunity, and the opportunity to retroactively drop a course, was his disability and his use of disability accommodations.

57. Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, and a hostile educational environment at CMU in violation of Section 504.

58. Such acts, omissions and failures by CMU proximately caused injuries to Plaintiff.

59. Defendant has discriminated against Plaintiff and denied him certain discretionary academic modifications (incomplete, retroactive drop, make-up examination) on the basis of his disability, all in violation of his rights pursuant to Section 504, depriving him of the opportunity to complete his education and further his career and inflicting emotional distress.

60. It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

61. Plaintiff is entitled to injunctive and declaratory relief to obtain the reasonable accommodations as permitted under the statute to allow him immediate access and participation in this education program.

**COUNT II: Violations of Title III of the Americans with Disabilities Act**

62. Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count II.

63. Plaintiff is a "qualified individual with a disability," as defined in 42 U.S.C. §12131(2). Plaintiff suffers from ADHD, which is a qualifying disability. This disability substantially limits major life activities, including learning and working, because it substantially limits his ability to complete examinations on a timely basis and limits his ability to organize and stay on task, thereby affecting his ability to function in his role as a student at Carnegie Mellon University.

64. Plaintiff is able to perform the essential functions to participate in Defendant's curriculum with or without accommodations but was discriminated against and placed at a disadvantage because of his disability.

65. CMU is considered to be a "place of public accommodation," as defined in 42 U.S.C. §12181(7), as it is a private school, so as to be covered by the mandates of the ADA.

66. CMU is a facility, the operation of which constitutes a program and services for ADA purposes.

67. A substantial factor in CMU's decision to deny Plaintiff's requests for incompletes, a final exam make-up opportunity, and the opportunity to retroactively drop a course, was his disability and his use of disability accommodations approved by the Office of Disability Resources.

68. Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination and a hostile educational environment at CMU. Such acts and omissions violate Section 504.

69. Such acts, omissions and failures by CMU proximately caused injuries to Plaintiff.

70. Defendant has discriminated against Plaintiff and denied him certain discretionary academic modifications (incomplete, retroactive drop, make-up examination) on the basis of his disability, all in violation of his rights pursuant to Title III, depriving him of the opportunity to complete his education and further his career and inflicting emotional distress.

71. It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

72. Plaintiff is entitled to injunctive and declaratory relief to obtain the reasonable accommodations as permitted under the statute to allow him immediate access and participation in this education program.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in Plaintiff's favor, and against Defendant, for (1) an injunction requiring CMU to reinstate Plaintiff into the MCDS Program; (2) compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000); (3) the costs and disbursements of this action, for interest, and such other attorney's fees and further relief as justice requires; and (4) any other relief that justice so requires.

Respectfully Submitted,

*/s/ Jennifer Modell*
Jennifer Modell
Attorney I.D. PA 208050
429 Forbes Avenue, Suite 450
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-4959
Fax: (412) 291-1389
Email: jennifermodell@ruderlaw.com

Date: August 31, 2018

## VERIFICATION

I, Sanchit Jain, hereby verifies that the facts set forth in this foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the statements in this Verification are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

*/s/ Sanchit*
_____
Sanchit Jain

## CERTIFICATE OF SERVICE

I, Jennifer Modell, Esquire, do hereby certify that a true and correct copy of the foregoing VERIFIED COMPLAINT is being served upon the following counsel of record via notice of electronic filing through Court's Case Management/Electronic Case File System and United States Postal Service this 31st day of August 2018.

Rick Etter, Esquire<br>
Fox Rothschild, LLP<br>
500 Grant Street<br>
Suite 2500<br>
Pittsburgh, PA 15219

**Ruder Law**

By:   */s/ Jennifer Modell*
       Jennifer Modell, Esquire