**IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SANCHIT JAIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-CV-1163 |
| | ) | |
| v. | ) | Jury Trial Demanded |
| | ) | |
| CARNEGIE MELLON UNIVERSITY, | ) | *ELECTRONICALLY FILED* |
| | ) | |
| Defendant. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S VERIFIED COMPLAINT**

Defendant Carnegie Mellon University ("CMU"), by and through its undersigned counsel, files this Answer and Affirmative Defenses to Plaintiff's Verified Complaint (the "Complaint"). Each paragraph of this Answer constitutes CMU's answer to the same numbered paragraph of the Complaint. CMU denies each and every allegation of the Complaint not specifically admitted herein.

**PRELIMINARY STATEMENT**[1]

1.     This cause of action is brought by Plaintiff, Sanchit Jain, a former student at Carnegie Mellon University ("CMU"), alleging disability-based discrimination in violation of Section 504 of the Rehabilitation Act of 1973 and Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et. seq.*

---

[1]     The headers and responses contained in this Answer are numbered to correspond to each of the headers and paragraphs in the Complaint.

**ANSWER:  CMU admits only that Plaintiff brings this cause of action pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title III of the Americans with Disabilities Act of 1990 (the "ADA").  CMU denies that it violated Section 504 or the ADA, and denies that Plaintiff is entitled to the relief sought in this action.**

2.      Plaintiff alleges that the Carnegie Mellon University discriminated against Plaintiff, a protected individual with a disability, by:

        a. Discouraging Plaintiff from utilizing his approved disability accommodations;

        b. Denying Plaintiff's request for an incomplete because he had previously availed himself of his approved disability accommodations;

        c. Denying Plaintiff an opportunity to take a make-up final exam;

        d. Denying Plaintiff opportunity to retroactively drop his courses;

        e. Subjecting Plaintiff to different grading scale than that of his peers in his Computer Networks course.

**ANSWER:  CMU admits only that Plaintiff brings this cause of action based on the cited allegations and theories.  CMU denies that it violated Section 504 or the ADA, denies that it engaged in any alleged unlawful conduct, and denies that Plaintiff is entitled to the relief sought in this action.**

3.      Plaintiff requests declaratory, injunctive, and equitable relief to remedy Carnegie Mellon University's discrimination.

**ANSWER:  CMU admits only that Plaintiff seeks the cited relief.  CMU denies that it violated Section 504 or the ADA, and denies that Plaintiff is entitled to the relief sought in this action.**

## PARTIES

4.      Plaintiff was at all relevant times, a student in Carnegie Mellon University's Master of Science in Computational Data Science ("MCDS") program in the School of Computer Science.

**ANSWER: CMU denies the allegations in Paragraph 4 of the Complaint.  By way of further answer, Plaintiff was enrolled in the Master of Computational Data Science Program ("MCDS Program") in CMU's School of Computer Science.**

5.      Defendant, Carnegie Mellon University, is a recipient of federal financial assistance for purposes of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and an undergraduate or postgraduate private school for purposes of Title III of the Americans with Disabilities Act.

**ANSWER: CMU admits the allegations in Paragraph 5 of the Complaint.**

## PROCEDURAL HISTORY

6.      On December 18, 2017, Plaintiff was dismissed from the MCDS program at Carnegie Mellon University on the grounds that he had failed two of his courses; one being a core course.

**ANSWER: CMU denies the allegations in Paragraph 6 of the Complaint.**

7.      On January 11, 2018, he submitted an appeal of the dismissal to the Dean of the School of Computer Science.

**ANSWER: CMU admits the allegations in Paragraph 7 of the Complaint.**

8.      On January 28, 2018, the Dean upheld the dismissal.

**ANSWER: CMU admits the allegations in Paragraph 8 of the Complaint.**

9.     Plaintiff appealed that decision to the Provost of the University on February 11, 2018. The Provost's Office upheld the Dean's decision on March 8, 2018.

**ANSWER:  CMU admits the allegations in Paragraph 9 of the Complaint.**

10.     On February 7, 2018, Plaintiff filed a complaint with the Office for Civil Rights.

**ANSWER:  CMU admits only that Plaintiff filed a complaint with the United States Department of Education Office for Civil Rights.  CMU lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 10 of the Complaint and, therefore, denies such allegations.**

## JURISDICTION AND VENUE

11.     Jurisdiction is invoked pursuant to 28 U.S.C. §1331 (questions of federal law) based upon Section 504 of the Rehabilitation Act of 1973 (hereinafter, referred to as "Section 504') and Title III of the Americans with Disabilities Act (hereinafter, referred to as the "ADA").

**ANSWER:  The allegations in Paragraph 11 of the Complaint constitute conclusions of law to which no response is required.**

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1)(2), because the events and omissions giving rise to the claims in this case arose in this judicial district.

**ANSWER:  The allegations in Paragraph 12 of the Complaint constitute conclusions of law to which no response is required.**

13.     The claims for declaratory and injunctive relief are authorized by 28 U.S.C. §2201 and §2202.

**ANSWER:  The allegations in Paragraph 13 of the Complaint constitute conclusions of law to which no response is required.**

## FACTS

14.     Plaintiff enrolled in Carnegie Mellon University's Master of Computational Data Science Program in the Fall of 2017.  Plaintiff had previously completed a year at the University of Wisconsin's Master of Science in Computer Science program where he earned a GPA of 4.0.

**ANSWER:  CMU admits only that Plaintiff enrolled in the MCDS Program in Fall 2017. CMU lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 14 of the Complaint and, therefore, denies such allegations.**

15.     Plaintiff was diagnosed with Adult ADHD (inattentive type) in December 2016 while enrolled at University of Wisconsin.

**ANSWER:  CMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint and, therefore, denies such allegations.**

16.     In May 2017, while at University of Wisconsin, Plaintiff also began experiencing a sleep disorder which caused him to sleep excessively and have significant difficulty awakening from sleep.  This was ultimately diagnosed in March 2018 as chronic hypersomnia as well as Microcytic Anemia, Beta Thalassemia & Severe Vitamin B-12 deficiency.  Because Plaintiff did not consider this a disability, but a chronic health condition, he did not report it to the Disability Resources and Service Office at CMU.

**ANSWER:  CMU admits only that Plaintiff did not report this alleged "chronic health condition" to the University's Office of Disability Resources until December 28, 2017 when he orally informed the Office of Disability Resources of this alleged condition.  CMU further admits that Plaintiff never provided medical documentation of this alleged "chronic health condition" to the University's Office of Disability Resources.  CMU lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Complaint and, therefore, denies the remaining allegations.**

17.     Plaintiff enrolled in the following courses for the Fall 2017 semester at CMU: Distributed Systems (15-640); Computer Networks (15-641), Storage Systems (15-746) and Systems Seminar (15-649A). He eventually dropped Storage Systems to give himself more time to focus on his other courses.

**ANSWER:  CMU admits only that Plaintiff enrolled in Distributed Systems (15-640), Computer Networks (15-641), Advanced Storage Systems (15-746) and Systems Seminar (15-649A), and that Plaintiff enrolled in and then dropped Advanced Storage Systems (15-746).  CMU lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 17 of the Complaint and, therefore, denies such allegations.**

18.     After Plaintiff enrolled at CMU, he met with the University's Disability Resources and Services Office to request reasonable accommodations for his ADHD.

**ANSWER:  CMU admits only that after Plaintiff enrolled at CMU, he met with the University's Office of Disability Resources regarding his self-identified ADHD and an accommodation.  CMU denies the remaining allegations in Paragraph 18 of the Complaint.**

19.    Upon presentation of the appropriate medical documentation, he was granted certain disability accommodations and a Summary of Accommodations Memorandum was issued on September 27, 2017.

**ANSWER:  CMU admits only that Plaintiff was granted accommodations and that the September 27, 2017 Summary of Accommodations Memorandum is a written document which speaks for itself.  CMU denies the remaining allegations in Paragraph 19 of the Complaint.**

20.    The Memorandum, applicable only for the 2017-2018 school year, provided that Plaintiff would receive the following accommodations: one hundred percent additional time on examinations; additional notes/taped lectures (student must request notes from other students); flexible assignment completion dates where possible and appropriate.

**ANSWER:  CMU admits only that the September 27, 2017 Summary of Accommodations Memorandum is a written document which speaks for itself.  CMU denies the remaining allegations in Paragraph 20 of the Complaint.**

21.    Plaintiff was given a Flexible Assignment Completion Student-Faculty Agreement which was to be completed with each professor from whom he wished to get this accommodation. The form indicated that faculty and students were "encouraged to dialogue about a student's accommodations to determine where a faculty member can (or cannot) be flexible. [sic]

**ANSWER:  CMU admits only that Plaintiff was given a Flexible Assignment Completion Student-Faculty Agreement, which is a written document which speaks for itself.  CMU denies the remaining allegations in Paragraph 21 of the Complaint.**

22.    The form required that the faculty member note the various assignments for the class and indicate whether extra time would be allowed and specify how much extra time would be allowed for each assignment.

**ANSWER:  The Flexible Assignment Completion Student-Faculty Agreement is a written document which speaks for itself.  CMU denies the remaining allegations in Paragraph 22 of the Complaint, as stated.**

23.    Plaintiff provided the Accommodation Memorandum his professors in Distributed Systems and Computer Networks as well as the Flexible Assignment Completion Faculty Student Agreement Form.

**ANSWER:  CMU admits the allegations in Paragraph 23 of the Complaint.**

24.    Plaintiff met with Professor Srinivasa Seshan, who taught Distributed Systems. Professor Seshan did not engage in a back and forth dialogue envisioned by the Office of Disability Resources, but simply informed Plaintiff that homework solutions were posted immediately following submission deadlines so that flexible assignment deadlines were not possible. Professor Seshan also indicated that it was not possible to grant extensions on group projects and that because solo projects were followed almost immediately by a group project, it would not be possible to grant extensions on the solo projects. Professor Seshan did not engage in a good faith, interactive discussion as to how he could accommodate Plaintiff and did not complete a Flexible Assignment Completion Faculty Student Agreement Form.

**ANSWER:  CMU admits only that Plaintiff met with Professor Seshan – who taught Distributed Systems (15-640) regarding his Flexible Assignment Completion Student-Faculty Agreement.  CMU denies the remaining allegations in Paragraph 24 of the Complaint.**

25.     In an email to the Office of Disability Resources in October 2017, Plaintiff indicated that contrary to Professor Seshan's statement, the homework solution for the assignment that had been given thus far, was posted a week, rather than the day after the submission deadline. As such, a flexible deadline could have been provided in that instance.

**ANSWER:  CMU admits only that Plaintiff's October 10, 2017 and October 12, 2017 emails to the Office of Disability Resources are written documents which speak for themselves. CMU denies the remaining allegations in Paragraph 25 of the Complaint.**

26.     Plaintiff also attempted to obtain a Flexible Assignment Completion Faculty-Student Agreement from Professor Steenkiste, who taught Computer Networks. Professor Steenkiste informed Plaintiff that it because was not possible to determine deadline and extension dates in advance, he could not complete the Agreement. However, he requested that Plaintiff email him 2-3 days before project deadlines to request extensions.

**ANSWER:  CMU admits only that Plaintiff provided the Flexible Assignment Completion Student-Faculty Agreement to Professor Steenkiste, who taught Computer Networks (15-641).  CMU denies the remaining allegations in Paragraph 26 of the Complaint.**

27.     During the month of October, Professor Seshan assigned a project that was to be completed with a partner. Both Plaintiff and his partner experienced health difficulties that impacted their ability to complete the project in a timely fashion. Upon presentation of medical documentation, Professor Seshan granted the pair an extension as well as additional time to study for the mid-term examination. This was despite his prior representation, in the context of a request for disability accommodation, that there were no flexible deadlines for group projects.

**ANSWER:  CMU admits only that in October 2017, Professor Seshan assigned a project that was to be completed with a partner, that Plaintiff and his assigned partner reported to Professor Seshan that they were experiencing health issues that prevented them from completing the assignment on time, that Professor Seshan provided extensions to Plaintiff and his partner for this assignment, and that Professor Seshan provided Plaintiff with additional time to study for his mid-term examination.   CMU denies the remaining allegations in Paragraph 27 of the Complaint.**

28.     In December 2017, Plaintiff requested an extension for a solo project in the same course. Professor Seshan provided everyone in the course the opportunity to submit the project two days late with a penalty. As an accommodation for Plaintiff, Professor Seshan, indicated that should he submit the project two days late, Plaintiff would receive only a one-day penalty instead of the two days that would be accorded the other students.

**ANSWER:  CMU admits only that Professor Seshan provided his class with the option of submitting a solo project two days late with a penalty, and that Professor Seshan told Plaintiff that he could submit the project two days late with a one-day penalty.  Professor Seshan's December 10, 2018 email is a written document which speaks for itself.  CMU denies the remaining allegations in Paragraph 28 of the Complaint.**

29.     However, Plaintiff was unable to complete the project by the extended (two day) deadline and the professor refused to grant an additional extension; indicating that the University did not allow submissions after finals week. As such, Plaintiff was unable to submit and receive any credit for that project.

**ANSWER:  CMU admits only that Plaintiff did not complete the solo project, the Plaintiff did not receive credit for the solo project, and that Professor Seshan did not provide an additional extension.  CMU denies the remaining allegations in Paragraph 29 of the Complaint.**

30.    Because Plaintiff was not able to submit the project and would thus receive a class grade below the required passing grade, he requested an incomplete in the course on December 11, 2017.

**ANSWER:  CMU admits only that Plaintiff requested an incomplete in Professor Seshan's course on December 11, 2018.  CMU lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 30 of the Complaint relating to why Plaintiff requested incomplete and, therefore, denies the remaining allegations.**

31.    The request was intended not as a request for a disability accommodation, but as a standard request for an incomplete which, per CMU Policy guidelines and those contained in Master of Computational Data Science Program Student Handbook, is to be given if the instructor agrees "when a student, for reasons beyond his or her control, has been unable to complete the work of a course, but the work completed to date is of passing quality and the grade of incomplete provides no undue advantage to that student over other students."

**ANSWER:  The MCDS Student Handbook is a written document which speaks for itself. CMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint relating Plaintiff's intentions and, therefore, denies that and any remaining allegations.**

32.     The work completed by Plaintiff as of that date was of passing quality and the grade of incomplete would give him no undue advantage as Plaintiff would still be required to complete the project at a later date and otherwise be subject to all other course requirements.

**ANSWER:  CMU denies the allegations in Paragraph 32 of the Complaint.**

33.     Plaintiff attempted to provide medical documentation to Professor Seshan to document the "circumstances beyond his control" which necessitated the request for an incomplete. However, Professor Seshan responded that "unfortunately, without an explicit medical letter/request from CMU disability, we will not be able to give you an incomplete." He later indicated that he needed a note from the CMU administration requiring that an incomplete be granted for the semester.

**ANSWER:  CMU admits only that Professor Seshan responded to Plaintiff's request for an incomplete by saying that "unfortunately, without an explicit medical letter/request from CMU disability, we will not be able to give you an incomplete," that Plaintiff said he would "try getting a medical letter on Wednesday," and that Professor Seshan then clarified that he meant "a note from the CMU administration requiring that we grant you an incomplete for the semester."  CMU denies the remaining allegations in Paragraph 33 of the Complaint.**

34.     Plaintiff responded that he was not requesting an incomplete as a disability accommodation but as an academic modification afforded students at CMU (and at all institutes of higher education) when circumstances arise beyond their control which impact their ability to complete their work in a timely fashion. However, Plaintiff agreed to contact the Office of Disability Resources to attempt to obtain the documentation requested by Professor Seshan.

**ANSWER:  CMU admits only that Plaintiff told Professor Seshan that he would contact the Office of Disability Resources.  CMU denies the remaining allegations in Paragraph 34 of the Complaint.**

35.     In response to Plaintiff's request, the Office of Disability Resources responded that it was unable to recommend an incomplete because incompletes are purely academic decisions made at the discretion of each individual course instructor.

**ANSWER: CMU admits only that the Office of Disability Resources responded to Plaintiff's December 14, 2017 email that "Disability Resources is not able to recommend that students take incompletes as a disability accommodation."  CMU denies the remaining allegations in Paragraph 35 of the Complaint.**

36.     When Plaintiff brought this to the attention of the instructor, Professor Seshan indicated that Plaintiff would not be receiving an incomplete grade for his course because he had already been granted too many extensions.

**ANSWER:  CMU admits only that Professor Seshan denied Plaintiff an incomplete on December 14, 2017.  CMU denies the remaining allegations in Paragraph 36 of the Complaint.**

37.     On December 11, 2017, Plaintiff also requested an incomplete in his Computer Networking course because of difficulty submitting classwork on time. Professor Sherry, one of the professors for the class, simply responded that they could not assign an incomplete, but that it was not too late to drop/withdraw. No reason was given for the denial and despite later emails faulting Plaintiff for not providing medical records to support his request, Professor Sherry never requested any supporting documentation before denying the incomplete.

**ANSWER:  CMU admits only that Plaintiff requested an incomplete from Professor Sherry, one of the Computer Networking (15-641) professors (together with Professor Steenkiste), and that Professor Sherry told Plaintiff "we cannot assign an incomplete.  It's not too late to drop/withdraw, but I think you are very close to the finish line and can make it."  CMU denies the remaining allegations in Paragraph 37 of the Complaint.**

38.     Plaintiff learned that he would not be receiving the incompletes shortly before the final examination in his Computer Networking course. The denial of his request for the incomplete caused Plaintiff significant anxiety and he failed the final examination as a result.

**ANSWER:   CMU admits only that Professor Seshan (Distributed Systems – 15-640) informed Plaintiff that he would not receive an incomplete on the same day as his final examination in Computer Networking (15-641), and that Professor Sherry (Computer Networking – 15-641) notified Plaintiff that he would not receive an incomplete on December 12, 2017.  CMU lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 38 of the Complaint, therefore, denies the remaining allegations.**

39.     Knowing that this anxiety also might impact his performance on the examination in Distributed Systems, Plaintiff requested that he be permitted to take a make-up examination in that course rather than take it on the scheduled day. CMU policy provides that in exceptional circumstances, a student may encounter an emergency that interferes with his/her ability to participate in a final examination. In such instances, the policy provides that the student should contact the instructor as soon as possible to request a make-up exam. Plaintiff contacted the professor requesting that he be permitted to take the final examination on another day due to his health condition.

**ANSWER:  CMU's policies are written documents which speak for themselves.  Plaintiff's December 17, 2017 email – in which he requests an extension for the Distributed Systems (15-640) final exam on the date of the exam – is a written document which speaks for itself. CMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint relating to what Plaintiff "knew" and, therefore, denies those and all remaining allegations.**

40.    The professor responded that there was no "planned" make up exam for that semester and that therefore Plaintiff would have to take the final examination on the regularly scheduled examination date.

**ANSWER:  The December 17, 2017 email to Plaintiff is a written document which speaks for itself.  CMU denies the remaining allegations in Paragraph 40 of the Complaint.**

41.    This disability-based discrimination was further evidenced in statements made by Plaintiff's advisor, Professor Majd Sakr, who urged Plaintiff not to request flexible assignment completion accommodations for any of his assignments. He said this to Plaintiff repeatedly during advisory sessions and on December 11, 2017, sent him an email explicitly stating that he should not ask for another extension or an incomplete in his courses. In discouraging Plaintiff from utilizing a disability accommodation (flexible assignment completion), Professor Majd Sakr engaged in disability discrimination.

**ANSWER:  CMU admits only that Plaintiff's advisor – Professor Majd Sakr – repeatedly counseled Plaintiff regarding the use of his flexible assignment requests in hopes that Plaintiff could appropriately prioritize his assignments and workload.  Professor Sakr's December 11, 2017 email is a written document which speaks for itself.  CMU denies the remaining allegations in Paragraph 41 and specifically denies any disability discrimination by Professor Sakr or anyone at CMU.**

42.     Because Plaintiff was denied incompletes and the opportunity to take a make-up examination, his grades were negatively impacted, and he requested permission from his advisor, Professor Sakr, to retroactively drop the Distributive Systems Course. The CMU website provides a form entitled "Retroactive Add/Drop Petition, Prior Semester" and indicated that by submitting the petition, the student is "requesting permission to add/drop a course after the last day of classes." The form further provides that graduate students must have the permission of their department. Neither the form nor CMU or program policy manuals provide any further information as to any restrictions on dropping a course or what factors might go into determining whether a student might be permitted to take that action.

**ANSWER:  The Retroactive Add/Drop Petition, Prior Semester form and the MCDS Program Student Handbook are written documents which speaks for themselves.  CMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint relating Plaintiff's intentions and, therefore, denies those and all remaining allegations in Paragraph 42 of the Complaint.**

43.     Professor Sakr denied Plaintiff's request to retroactively drop the course without providing a reason.

**ANSWER:   CMU admits only that Plaintiff's request to retroactively drop Distributive Systems (15-640) was denied.  CMU denies the remaining allegations in Paragraph 43 of the Complaint.**

44.     In fact, rather than grant the request to retroactively drop the course, Professor Sakr recommended that Plaintiff take a one to two year leave of absence and to "mature" and be less susceptible to bullying. These discriminatory statements and the overall failure to assist Plaintiff as he struggled with his disability and a chronic health condition that compounded the impact of his disability, created a hostile environment for the Plaintiff.

**ANSWER:  CMU denies the allegations in Paragraph 44 of the Complaint.**

45.     On December 18, 2017 met with Director of the MCDS Program, Professor Eric Nyberg to discuss his academic issues. Professor Nyberg requested that Plaintiff write an Academic Recovery Plan for the upcoming Academic Review meeting in which Plaintiff was to hold himself accountable (and not blame others) for his academic difficulties.

**ANSWER:  CMU admits only that Plaintiff met with the Director of the MCDS Program – Professor Eric Nyberg – on December 18, 2017 and that they discussed Plaintiff's academic performance and the upcoming Academic Review meeting.  CMU denies the remaining allegations in Paragraph 45 of the Complaint.**

46.     Plaintiff complied with this request and wrote a Recovery Plan in which he indicated that he should have prioritized his assignment rather than focus on extensions requesting extensions for past due projects. This admission in no way dilutes Plaintiff's claim that he was discriminatorily denied incompletes, a make-up exam, and retroactive course drop because of his disability.

**ANSWER:  CMU admits only that Plaintiff wrote and submitted an "Academic Recovery Plan" and that the "Academic Recovery Plan" is a written document which speaks for itself. CMU denies the remaining allegations in Paragraph 46 of the Complaint.**

47.     Plaintiff was also subjected to a different grading standard than his peers in his Computer Networking class. He was required to get a 75% to get a grade of D in a course whereas his peers received the grade of D for a 60%.

**ANSWER:  CMU denies the allegations in Paragraph 47 of the Complaint.**

48.     As a result of the above-described failures of CMU and Professors in the MCDS program to help Plaintiff access the full range disability accommodations and discretionary academic modifications offered to all students, Plaintiff failed both Computer Networking and Distributed Systems and was eventually dismissed from the program.

**ANSWER:  CMU denies the allegations in Paragraph 48 of the Complaint.**

49.     Plaintiff participated in all levels of the internal appeal process, and his dismissal was ultimately upheld. As a result of its "investigation," CMU concluded that Plaintiff had not been discriminated against on the basis of his disability. In upholding the dismissal, the final letter from the Provost's office dated March 8, 2018, indicated that "the University does not grant retroactive accommodations, particularly in cases where accommodations are not requested until very late in the semester and without medical documentation of any changes to your medical conditions to support your requested additional accommodations."

**ANSWER:  CMU admits only that Plaintiff participated in CMU's internal appeal process and that his dismissal from the MCDS Program was upheld.  The Provost's March 8, 2018 is a written document which speaks for itself.  CMU denies the remaining allegations in Paragraph 49 of the Complaint.**

50.     In upholding Plaintiff's dismissal on these grounds, CMU improperly treated all of Plaintiff's requests (for an incomplete, to retroactively drop a class, and to take a make-up exam) as disability accommodations. This is in direct contradiction to the University's own policies and those of the Office of Disability Resources. All of the above academic modifications are offered to students with and without disabilities, are granted at the discretion of the instructor, and do not require the same level of medical documentation and formality as do disability accommodations which must be processed by the Office of Disability Resources.

**ANSWER:  CMU denies the allegations in Paragraph 50 of the Complaint.**

51.     By improperly positing Plaintiff as seeking disability accommodations, the University effectively deflected attention away from the discriminatory actions of its professors and placed the blame on Plaintiff for his failure to abide by the rules regarding seeking and obtaining disability accommodations. However, the facts show that Plaintiff struggled with an undiagnosed medical condition, apart from his disability, that flared up during the period he was attending CMU. As would any student experiencing a transient medical condition, Plaintiff attempted to utilize the resources available to students in such circumstances: incompletes, exam make-ups, and retroactive course drops. However, because Plaintiff also necessitated disability accommodations, the University unfairly and discriminatorily denied him access to those other resources.

**ANSWER:  CMU denies the allegations in Paragraph 51 of the Complaint.**

## COUNT I: VIOLATION OF SECTION 504
## OF THE REHABILITATION ACT OF 1973

52.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count I.

**ANSWER:  CMU restates each of its responses to the preceding paragraphs as if set forth herein.**

53.     Plaintiff is a qualified individual with a disability, as defined by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §705(20). Plaintiff suffers from ADHD**,** which is a qualifying disability. This disability substantially limits major life activities; including learning and working, because it substantially limits his ability to complete examinations on a timely basis and limits his ability to organize and stay on task, thereby affecting his ability to function in his role as a student at Carnegie Mellon University.

**ANSWER:  The allegations in Paragraph 53 of the Complaint constitute conclusions of law to which no response is required.**

54.    Plaintiff is otherwise qualified to participate in CMU's curriculum and is able to participate in said program with reasonable accommodations.

**ANSWER:  The allegations in Paragraph 54 of the Complaint constitute conclusions of law to which no response is required.**

55.    Defendant receives federal financial assistance, as defined by 29 U.S.C. §7904, and, as such, may not discriminate against a person because of his disability.

**ANSWER:  CMU admits the allegations in Paragraph 55 of the Complaint.**

56.    A substantial factor in CMU's decision to deny Plaintiffs requests for incompletes, a final exam make-up opportunity, and the opportunity to retroactively drop a course, was his disability and his use of disability accommodations.

**ANSWER:  CMU denies the allegations in Paragraph 56 of the Complaint.**

57.    Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination, and a hostile educational environment at CMU in violation of Section 504.

**ANSWER:  CMU denies the allegations in Paragraph 57 of the Complaint.**

58.    Such acts, omissions and failures by CMU proximately caused injuries to Plaintiff.

**ANSWER:  CMU denies the allegations in Paragraph 58 of the Complaint.**

59.     Defendant has discriminated against Plaintiff and denied him certain discretionary academic modifications (incomplete, retroactive drop, make-up examination) on the basis of his disability, all in violation of his rights pursuant to Section 504, depriving him of the opportunity to complete his education and further his career and inflicting emotional distress.

**ANSWER:  CMU denies the allegations in Paragraph 59 of the Complaint.**

60.     It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

**ANSWER:  CMU denies the allegations in Paragraph 60 of the Complaint.**

61.     Plaintiff is entitled to injunctive and declaratory relief to obtain the reasonable accommodations as permitted under the statute to allow him immediate access and participation in this education program.

**ANSWER:  CMU denies the allegations in Paragraph 61 of the Complaint.**

<u>**COUNT II: VIOLATIONS OF TITLE III OF**</u>
<u>**THE AMERICANS WITH DISABILITIES ACT**</u>

62.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs into Count II.

**ANSWER:  CMU restates each of its responses to the preceding paragraphs as if set forth herein.**

63.     Plaintiff is a "qualified individual with a disability," as defined in 42 U.S.C. §12131(2). Plaintiff suffers from ADHD, which is a qualifying disability. This disability substantially limits major life activities, including learning and working, because it substantially limits his ability to complete examinations on a timely basis and limits his ability to organize and stay on task, thereby affecting his ability to function in his role as a student at Carnegie Mellon University.

**ANSWER:  The allegations in Paragraph 63 of the Complaint constitute conclusions of law to which no response is required.**

64.     Plaintiff is able to perform the essential functions to participate in Defendant's curriculum with or without accommodations but was discriminated against and placed at a disadvantage because of his disability.

**ANSWER:  The allegations in Paragraph 64 of the Complaint constitute conclusions of law to which no response is required.**

65.     CMU is considered to be a "place of public accommodation," as defined in 42 U.S.C. §12181(7), as it is a private school, so as to be covered by the mandates of the ADA.

**ANSWER:  CMU admits the allegations in Paragraph 65 of the Complaint.**

66.     CMU is a facility, the operation of which constitutes a program and services for ADA purposes.

**ANSWER:  The allegations in Paragraph 66 of the Complaint constitute conclusions of law to which no response is required.**

67.     A substantial factor in CMU's decision to deny Plaintiffs requests for incompletes, a final exam make-up opportunity, and the opportunity to retroactively drop a course, was his disability and his use of disability accommodations approved by the Office of Disability Resources.

**ANSWER:  CMU denies the allegations in Paragraph 67 of the Complaint.**

68.     Solely by reason of his disability, Plaintiff was excluded from the participation in, denied the benefits of, subjected to discrimination and a hostile educational environment at CMU. Such acts and omissions violate Section 504.

**ANSWER:  CMU denies the allegations in Paragraph 68 of the Complaint.**

69.     Such acts, omissions and failures by CMU proximately caused injuries to Plaintiff.

**ANSWER:  CMU denies the allegations in Paragraph 69 of the Complaint.**

70.     Defendant has discriminated against Plaintiff and denied him certain discretionary academic modifications (incomplete, retroactive drop, make-up examination) on the basis of his disability, all in violation of his rights pursuant to Title III, depriving him of the opportunity to complete his education and further his career and inflicting emotional distress.

**ANSWER:  CMU denies the allegations in Paragraph 70 of the Complaint.**

71.     It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

**ANSWER:  CMU denies the allegations in Paragraph 71 of the Complaint.**

72.     Plaintiff is entitled to injunctive and declaratory relief to obtain the reasonable accommodations as permitted under the statute to allow him immediate access and participation in this education program.

**ANSWER:  CMU denies the allegations in Paragraph 72 of the Complaint.**

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in Plaintiff's favor, and against Defendant, for (1) an injunction requiring CMU to reinstate Plaintiff into the MCDS Program; (2) compensatory damages in the amount excess of Seventy-Five Thousand Dollars ($75,000); (3) the costs and disbursements of this action, for interest, and such other attorney's fees and further relief as justice requires; and (4) any other relief that justice so requires.

**No response to the "WHEREFORE" clause following Paragraph 72 of the Complaint is required.  To the extent a response is required, CMU denies that Plaintiff is entitled to any of the relief that he seeks in the Complaint, including the relief sought in said "WHEREFORE" section, and respectfully requests that the Court enter judgment in favor of CMU and against Plaintiff, dismissing the Complaint in its entirety and with prejudice, and awarding CMU its attorneys' fees, costs and such other and further relief as the Court deems equitable and just.**

## <u>SEPARATE AND AFFIRMATIVE DEFENSES</u>

By way of further response to Plaintiff's Complaint, CMU sets forth the following separate and affirmative defenses, without assuming any burden of proof that it does not have as a matter of law.

1.     The Complaint fails to state a claim against CMU upon which relief can be granted.

2.      CMU has not discriminated against Plaintiff on the basis of any disability or alleged disability, has not retaliated against him, has not harassed him, and has not violated any of Plaintiff's rights or harmed him in any way.  To the contrary, CMU has at all times treated Plaintiff in accordance with the law.

3.      Plaintiff is not an otherwise qualified person with a disability within the meaning of applicable laws.

4.      CMU provided all reasonable accommodations requested by Plaintiff.

5.      CMU made numerous good faith and reasonable efforts and accommodations for Plaintiff.

6.      Some or all of the actions and/or changes sought by Plaintiff would result in an undue burden on CMU and/or would fundamentally alter the nature of the services, facilities, privileges, advantages, goods, or accommodations provided by CMU.

7.      CMU, at all times, complied with its internal policies and procedures.

8.      CMU, at all times, held Plaintiff to the same standards and grading scale as similarly-situated students.

9.      Plaintiff failed to cooperate with CMU in good faith for purposes of identifying and implementing reasonable accommodations.

10.     Any and all actions taken or decisions made regarding Plaintiff were reasonable and were based on legitimate, nondiscriminatory reason.

11.     Plaintiff has failed to mitigate his alleged damages.

12.     If Plaintiff has suffered any loss or damage, which CMU denies, any such loss or damage was caused by Plaintiff's own actions and not by any alleged unlawful conduct on the part of CMU.

13.     For the purposes of preserving a defense, rights of action alleged in the Complaint are barred either in whole or in part by the applicable statutes of limitations.

14.     For the purposes of preserving a defense, Plaintiff's claims are barred by the doctrines of waiver, estoppel and unclean hands.

15.     Plaintiff cannot recover monetary damages.

16.     Plaintiff cannot recover the injunctive relief sought in the Complaint.

17.     CMU reserves the right to add additional defenses as they become known through discovery or investigation.

WHEREFORE, Defendant Carnegie Mellon University denies any liability to Plaintiff and denies that Plaintiff has a right to any relief, including that sought in the Complaint.  Defendant Carnegie Mellon University respectfully requests that the Court enter judgment in its favor and against Plaintiff, dismiss the Complaint in its entirety and with prejudice, and award Defendant Carnegie Mellon University its attorneys' fees, costs and such relief as the Court deems equitable and judge.

Dated:  October 30, 2018

Respectfully Submitted,

REED SMITH LLP

*/s/  Mariah H. McGrogan*
Catherine S. Ryan (Pa. ID 78603)
Mariah H. McGrogan (Pa. ID 318488)
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, Pennsylvania  15222
T:  (412) 288-4226/3152
F:  (412) 288-3063
E:  cryan@reedsmith.com
    mmcgrogan@reedsmith.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 30, 2018 the foregoing *Answer and Affirmative Defenses to Plaintiff's Verified Complaint* was filed electronically with the Court. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system, and the parties may access this filing through the Court's system.


*/s/ Mariah H. McGrogan*
*Attorney for Defendant*